RALPH PARKER VERRILL, petitioner.

No. 94-P-1158.

Norfolk. November 7, 1995. - February 6, 1996.

Present: WARNER, C.J., PORADA, & LAURENCE, JJ.

*Name. Criminal Records. Probate Court,* Change of name.

A judge of the Probate Court properly concluded that allowance of a certain petition filed under G. L. c. 210, § 12, seeking a change of name by a State prisoner who was serving a life sentence with the possibility of parole and who had a lengthy record of violent offenses, would be inconsistent with the public interest, where the name change would likely cause significant confusion in the criminal justice system if the prisoner were released: moreover, the petitioner was not prejudiced where he had a common law right to use a name of his choosing provided he had no fraudulent intent. [35-37]

PETITION filed in the Norfolk Division of the Probate and Family Court Department on July 10, 1992.

The case was heard by *Christina L. Harms,* J.

*Djuna E. Perkins,* Assistant Attorney General, for the Attorney General & others.

*Ralph Parker Verrill,* pro se, submitted a brief.

The following submitted briefs for amici curiae:

*Nancy A. White,* Special Assistant Attorney General, & *Herbert C. Hanson, Sr.,* for Department of Correction.

*Anthony C. Sicuso & Elizabeth V. Tavares* for the Commissioner of Probation.

*Lisa M. Prescott* for Massachusetts Parole Board.

WARNER, C.J. Ralph Parker Verrill (petitioner) filed a petition in the Probate Court under G. L. c. 210, § 12, seeking to change his name to "Jerry Irish Murphy." The court dispensed with the publication requirement as delineated in

G. L. c. 210, § 13, upon the petitioner's request.[1] There was no opposition. After hearing, a probate judge denied the petition. The petitioner appealed. We affirm.

The judge found the following relevant facts which were stipulated to by the petitioner.[2] The petitioner is currently serving a life sentence for murder in the Bay State Correctional Center in Norfolk, with the possibility of parole. In addition, his criminal record is replete with prior convictions, including attempted armed robbery, assault and battery with a dangerous weapon, and kidnapping. The reason given for the name change request was that, while the petitioner's legal name since his 1935 birth has been Ralph Parker Verrill, he had been raised for the first twelve years of his life under the name "Jerry Irish Murphy." His family and friends call him "Jerry Irish Murphy." After the judge expressed concern about allowing the petition, the petitioner, as an apparent afterthought, said that he desired to change his name on account of having been raised as a Roman Catholic.[3]

"[A]t common law a person may change his name at will, without resort to legal proceedings, by merely adopting another name, provided that this is done for an honest purpose." *Merolevitz, petitioner*, 320 Mass. 448, 450 (1946), and cases cited. *Secretary of the Commonwealth* v. *City Clerk of Lowell*, 373 Mass. 178, 183 (1977). It is well settled that no person has the absolute right to change his or her name by way of legal process. *Rusconi, petitioner*, 341 Mass. 167, 170 (1960). Under G. L. c. 210, § 12, as amended by St. 1977, c. 869, § 3, "[t]he change of name of a person shall be granted unless such change is inconsistent with public interests." The statute does not abrogate the common law right to use a name of one's choosing. *Merolevitz, petitioner, supra* at 450. It simply aids a petitioner in securing an "official record which

---

[1]Section 13, as amended through St. 1966, c. 342, § 1, provides, in relevant part, "The court shall, before decreeing a change of name, request a report from the commissioner of probation on the person filing the petition and, except for good cause shown, require public notice of the petition to be given and any person may be heard thereon . . . ."

[2]After her findings were made, the judge allowed the petitioner's motion to adopt and stipulate to them.

[3]The petitioner explained that while his father, Stanley Verrill, was an English Protestant, it was his Irish Catholic mother, Elizabeth Murphy, who was responsible for his upbringing; he wanted his name to reflect this part of his personal history. But see note 4, *infra*.

definitely and specifically establishes his change of name."
*Buyarsky, petitioner,* 322 Mass. 335, 338 (1948). *Secretary of
the Commonwealth* v. *City Clerk of Lowell, supra* at 188.

The judge denied the petition on three principal grounds:
(1) the petitioner's religious-based testimony was unpersua-
sive — the judge specifically found that its mention at the
close of the hearing was solely in response to her expressed
reluctance to allow the requested change[4]; (2) the denial of
the petition would not preclude the petitioner from continu-
ing to have friends and family members call him "Jerry Irish
Murphy," as long as there is no fraudulent intent; and (3) al-
lowing such a petition would be inconsistent with the strong
public interest in maintaining accurate criminal records.

Because there is no Massachusetts precedent governing this
case, the judge adopted the majority view of the applicable
law of other States. According to that view, a court's primary
responsibility in reviewing a name change application of a
prisoner is to "make sure no . . . wrongful consequences are
likely." *Matter of Mendelson,* 151 Misc. 2d. 367, 368 (N.Y.
Civ. Ct. 1991). See also *United States* v. *Duke,* 458 F. Supp.
1188, 1188-1189 (S.D.N.Y. 1978); *In Re Parrott,* 194 Ga.
App. 856 (1990); *Matter of Rouson,* 119 Misc. 2d 1069, 1069-
1070 (N.Y. County Ct. 1983). These cases held that confu-
sion in the criminal justice system and, more particularly, in
its record keeping is such a "wrongful consequence," and
that granting a name change to an inmate will likely result in
such confusion.

See also *In re Erickson,* 547 S.W. 2d 357, 359-360 (Tex.
Civ. App. 1977) (change of name may be inappropriate if
"desired for the purpose of concealing . . . a criminal rec-
ord").

The judge relied heavily on the reasoning in *Matter of Men-
delson, supra,* to support her conclusions. There, the petitioner
sought a name change in order to "sever all ties" with his al-
legedly abusive, alcoholic father. In reaching its decision to
deny the petition, the New York court weighed the petitioner's
"understandable" reason against "society's interests," *id.* at
368, and concluded that because the petitioner had been

---

[4]Indeed, in the petitioner's reply brief in this court, he states that there
was "simply never any religious argument to begin with. This [seemingly
religious-based] explanation was not based upon any religious right, but
rather was a simple explanation, nothing more and nothing less."

convicted of ten different serious offenses within a fourteen-year period, there would have been a significant possibility for record keeping confusion in the criminal justice system had the petition been allowed. "Many agencies (e.g., the courts, the Department of Correction, probationary and parole services and the FBI) keep records on convicted criminals. Any potential source of confusion in this vital matter should be avoided." *Ibid.* Accurate record keeping was not the court's only concern; the court further explained that a familiar name is a useful investigatory tool for the police. *Id.* at 368-369.

In this case, the judge also weighed the petitioner's "understandable" reason with "society's interests." See G. L. c. 210, § 12 (change must not be inconsistent with "public interests"). We are satisfied that the judge properly concluded that allowance of the petition would be inconsistent with the public interest. Contrast *Buyarsky, petitioner*, 322 Mass. at 338-339. The petitioner has a lengthy record of serious offenses, which include murder and kidnapping. Further, while the petitioner is currently incarcerated, he may be paroled. Thus, granting the petitioner a name change would likely cause significant confusion in the criminal justice system if he were ever released.[5] Ultimately, granting the change would not be in the public interest if the petitioner were able later to elude criminal prosecution and conceal his identity. Moreover, the petitioner has not been unduly prejudiced by the denial of his petition. As previously noted, under the common law the petitioner can use any name without permission of the court provided there is no fraudulent intent. *Secretary of the Commonwealth* v. *City Clerk of Lowell, supra* at 183. We therefore affirm the decree of the Probate Court.

*So ordered.*

---

[5]Pursuant to Mass. R.A.P. 17, 365 Mass. 864 (1974), the Department of Correction, the Commissioner of Probation and the Massachusetts Parole Board each filed an amicus curiae brief. Both the Department of Correction and the Parole Board stated that many of their records are housed in different facilities and are not accessible by computer. Therefore, a name change may not be properly recorded and accurate record keeping would be seriously compromised. The Commissioner of Probation explained that while they do ordinarily receive notification under G. L. c. 210, § 13, the name change process does not alleviate potential confusion that would be caused in the *entire* workings of the criminal justice system. The petitioner's motion to invite Massachusetts Correctional Legal Services to file an amicus brief was allowed, but no such brief has been filed.